**Eldon P. DUFRENE, et al.**

v.

**BROWNING–FERRIS, INC.**

No. Civ.A. 97–0877.

United States District Court, E.D. Louisiana.

Feb. 18, 1998.

Daria Burgess Diaz, Andrew Allen Lemmon, Lemmon, Ellis & Diaz, LLC, New Orleans, LA, for plaintiffs.

Clare Willis Trinchard, Leigh Ann Tschirn Schell, Trinchard & Trinchard, New Orleans, LA, Rosalee M. McNamara, William C. Odle, Albert P. Mauro, Jr., Lathrop & Gage, Kansas City, MO, for defendant.

## ORDER AND REASONS

VANCE, District Judge.

Plaintiffs, comprised of residential truck drivers and hoppers,[1] and Defendant Browning–Ferris, Inc. ("BFI") filed cross motions for summary judgment. The Court rules as follows.

## I. BACKGROUND

Plaintiffs in this case all work for BFI and are employed as residential truck drivers, residential route supervisors, and hoppers.[2] Plaintiffs, on behalf of themselves and others similarly situated, brought this action to recover unpaid minimum wages and overtime compensation from BFI. In Counts I and II, plaintiffs allege that BFI violated the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), in two respects: (1) BFI failed to compensate its employees at a rate equal to or greater than the minimum hourly wage set forth at 29 U.S.C. § 206(a)(1); and (2) BFI failed to pay its employees overtime compensation in an amount equal to or greater than one and one half times their regular rate of pay for every hour worked in excess of 40 hours per workweek. Compl. ¶¶ 49–65. Plaintiffs' claims arose under a now expired collective bargaining agreement between BFI and Teamsters Local 270, which represented BFI's employees.

In a Case Management Order signed by this Court on September 26, 1997, the parties stipulated that the method or policy used by BFI to calculate overtime for the driver and hopper plaintiffs is as follows:

The method or process used by BFI to calculate overtime and the rate of overtime compensation paid for residential drivers, residential recycling drivers and hoppers is based on a day rate. The residential drivers are paid a day rate of $74.50 per day. The residential hoppers are paid a day rate of $61.75 per day. The Residential Recycling Drivers are paid a day rate of $76.00 per day. These wage rates and classifications are specified in Article 10 and Appendix A under the Collective Bargaining Agreement dated October 14, 1994. Employees are paid such day rates regardless of the number of hours worked in the day and BFI does not have a wage-payment policy limiting the number of hours an employee may work in a day. State and federal transportation and endurance regulations limit the number of hours that a truck driver can remain behind the wheel. BFI is required to comply with these regulations.

The overtime compensation is calculated as follows: Employees are given their day

---

1. The residential route supervisor plaintiff, Murray Broden, does not join in plaintiff's motion for summary judgment, and BFI's motion for summary judgment does not affect his claims because he is a salaried, rather than day-rate, employee.

2. A hopper is the worker who runs alongside the garbage truck and picks up the garbage left on the sidewalk for collection.

rate and it is multiplied by the number of days worked to determine the amount of compensation due. The total amount of compensation is then divided by the number of total hours worked to derive the hourly rate. The hourly rate is divided by 2 and that amount is then multiplied by the number of overtime hours. This calculation yields the total amount to be paid in overtime. The overtime pay is then added to the day rate for the week for the gross earnings per week. The following is an example of the formula based on a residential driver.

**Residential Driver Pay Rate: $74.50**

**Hours Worked for Week: 55**

Total Hours Worked For Week = 55 Hours (40 hours + 15 Hours Overtime)

$74.50 Per Day × 5 Days Worked = $372.50

$372.50 ÷ 55 Hours = $6.77 Per Hour ÷ 2 (equivalent to ½ time) = $3.38 per hour

$3.38 Per Hour × 15 (number of overtime hours) = $50.79 Overtime Pay

**Total Pay for Week: $372.50 (regular 40 work week) + $50.79 (overtime of 15 hours) = $423.29 Gross Earning for Week**

Case Management Order at 2–3.

The parties filed cross motions for summary judgment. BFI contends that its overtime wage policy follows all applicable federal regulations and that plaintiffs are unable to show otherwise. Plaintiffs assert that BFI's method violates the FLSA, and, even if the method is valid under the FLSA, BFI failed to comply with the requirements imposed by the regulations. Specifically, plaintiffs argue that BFI cannot establish that a clear mutual understanding existed on the part of the workers that the day rate compensation paid to them covered any and all hours worked in a day. Rather, plaintiffs submit that the workers understood that their compensation was based on an eight-hour day, forty-hour week.

## II. DISCUSSION

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2551, 91 L.Ed.2d 265 (1986). The court must be satisfied that no reasonable trier of fact could find for the nonmoving party, or in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir.1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The controversy in this case centers around the application of two federal regulations relating to labor and overtime compensation as required by the FLSA. Section 7(a)(1) of the FLSA provides in pertinent part: "[N]o employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Federal regulations provide the methods to calculate overtime compensation for workers who receive a fixed salary for fluctuating hours, whether weekly or daily. 29 C.F.R. § 778.114 applies to workers employed on a salary basis and states in pertinent part:

(a) An employee employed on a salary basis may have hours of work which fluctuate from week to week and the salary may be paid him pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many. Where there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period, such a salary arrangement is permitted by the Act if the amount of the salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those work-

weeks in which the number of hours he works is greatest, and if he receives extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay. Since the salary in such a situation is intended to compensate the employee at straight time rates for whatever hours are worked in the workweek, the regular rate of the employee will vary from week to week and is determined by dividing the number of hours worked in the workweek into the amount of the salary to obtain the applicable hourly rate for the week. Payment for overtime hours at one-half such rate in addition to the salary satisfies the overtime pay requirement because such hours have already been compensated at the straight time regular rate, under the salary arrangement.

\* \* \* \* \* \*

(c) The "fluctuating workweek" method of overtime payment may not be used unless the salary is sufficiently large to assure that no workweek will be worked in which the employee's average hourly earnings from the salary fall below the minimum hourly wage rate applicable under the Act, and unless the employee clearly understands that the salary covers whatever hours the job may demand in a particular workweek and the employer pays the salary even though the workweek is one in which a full schedule of hours is not worked.

29 C.F.R. § 778.114.

Section 778.112 applies to day-rate employees, and it provides:

If the employee is paid a flat sum for a day's work or for doing a particular job, without regard to the number of hours worked in the day or at the job, and if he receives no other form of compensation for services, his regular rate is determined by totaling all the sums received at such day rates or job rates in the workweek and dividing by the total hours actually worked. He is then entitled to extra half-

time pay at this rate for all hours worked in excess of 40 in the workweek.

29 C.F.R. § 778.112.

## A. The regulations do not violate the FLSA.

Plaintiffs first assert that the regulations violate the FLSA. The reasoning used in Condo v. Sysco Corp., 1 F.3d 599 (7th Cir.1993), in which the Court of Appeals for the Seventh Circuit held that § 778.114 complies with the FLSA, is applicable in this case because both § 778.114 and § 778.112 calculate overtime for fixed-wage employees in the same manner. In Condo, the Seventh Circuit questioned whether the Secretary of Labor's regulations—embodied in §§ 778.114 and 778.112—are permissible interpretations of § 7(a)(1) of the FLSA. The court used the three-step analysis established by the Supreme Court in Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), for judicial review of an agency's interpretation of a statute that it administers. First, the court must ask "whether Congress clearly expressed its intent in the plain language of the statute." Condo, 1 F.3d at 603. "If the language of the statute is determined to be either ambiguous or silent on the issue, however, the reviewing court is to proceed to a second inquiry: whether Congress delegated to the agency the authority to make the legal interpretation in issue." Id. at 604. Finally, if "Congress intended to deputize the agency with the authority to interpret the statute, the reviewing court is to make a third inquiry: 'whether the agency's answer is based on a permissible construction of the statute.'" Id. (quoting Chevron, 467 U.S. at 843, 104 S.Ct. at 2782). Further, "[s]o long as the agency's interpretation is reasonable, the court should defer to that interpretation and not impose its own construction on the statute." Id.

Section 7(a)(1) of the FLSA provides in pertinent part: "[N]o employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half

times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). The issue in this case is whether the fluctuating workweek method of computing overtime compensation is violative of the FLSA. Congress did not define "regular rate," nor did it instruct employers how to calculate overtime for workers whose hours fluctuate day by day or week by week. Thus, with respect to the first inquiry under *Chevron*, Congress did not express its intent with respect to the precise issue in this case.

█ The second inquiry of the *Chevron* analysis asks whether Congress delegated to the Secretary of Labor the authority to make the legal interpretation in issue. As the Seventh Circuit explained, Congress explicitly granted the Secretary of Labor the duty of administering the FLSA in 29 U.S.C. § 204. "By granting the Secretary of Labor the power to administer the FLSA, Congress implicitly granted him the power to interpret § 7(a)(1)." *Condo*, 1 F.3d at 605. In short, the Secretary's power to administer the FLSA would be ineffective if he could not interpret phrases left undefined and systems that went unaddressed.

█ The Court now moves to the third inquiry: whether the regulations at issue, 778.112 and 778.114, are permissible constructions of § 7(a)(1) of the FLSA. This Court agrees with the Seventh Circuit's analysis and holds that the regulations are permissible constructions of the FLSA. As made clear by the court in *Condo*:

> Under § 778.114 [and 778.112] an employee who receives a fixed weekly [or daily] salary for "all hours worked" receives the one and one-half times his regular rate for his overtime hours that is mandated by § 7(a)(1). The fixed salary compensates the employee for all his hours, the overtime ones included. He therefore receives 100% of his regular rate for each hour that he worked. As such, he is entitled only to an additional fifty percent of his regular rate for the hours that he worked in excess of forty.

*Condo*, 1 F.3d at 605. Although plaintiffs make much of the undisputed fact that the greater number of hours an employee works, the lower his rate will be, and the less he will receive in overtime compensation, "that does not cause the system to run afoul of the FLSA if, as in this case, the regular rate remains constant within each workweek and the employee receives one and one-half his regular rate for each overtime hour." *Id. See also Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 580, 62 S.Ct. 1216, 1221, 86 L.Ed. 1682 (1942) (acknowledging that longer hours produce less pay per hour but approving regulations' method of determining regular rate and stating that "[t]his is not an argument ... against this method of determining the regular rate of employment for the week in question").

**B. Plaintiffs are regulated under § 778.112, not § 778.114.**

█ Having determined that the regulations providing for overtime compensation do not violate the FLSA, the Court next considers plaintiffs' contention that BFI has failed to comply with the regulatory requirements because the employees do not have a "clear mutual understanding" of the compensation scheme as is mandated under § 778.114. This argument requires the Court to consider whether the applicable regulation is § 778.114, which expressly requires a "clear mutual understanding," or § 778.112, which does not.

It is uncontested that BFI compensates its residential truck drivers and hoppers on a day-rate basis. Case Management Order at 2; CBA, App. A, ¶ 2, at 37–38 (replacing §§ 10.01–10.03). Further, the parties stipulate that employees are paid the same day rates regardless of the number of hours worked in the day. Case Management Order at 2. BFI contends that the workers clearly fall under § 778.112 because plaintiffs are not employed on a salary basis, and they are specifically treated as day rate employees. BFI's primary argument is that, in contrast to what is contemplated under § 778.114, the workers are not paid if they do not work on a particular day. In other words, the workers do not receive a fixed weekly salary regardless of the days worked.

Plaintiffs suggest that § 778.112 does not apply to the workers because the day-rate/job-rate method of compensation described in

that section was not designed for full-time, regular employees. Plaintiffs point out that the workers do not contract out their services and, instead, are employed on a regular basis by BFI. Further, after a probationary period, workers qualify to receive certain benefits, such as holiday pay and vacation time. *See* CBA, Arts. 16–18. In sum, plaintiffs argue that BFI should not be permitted to calculate the workers' overtime on the basis of § 778.112.

The Court agrees with defendants and concludes that, because the workers are paid according to a daily rate, BFI need not abide by § 778.114 and must only comply with the requirements set forth in the regulation covering daily rate employees. The distinction between the two regulations is explicit: Section 778.112 applies to workers who are "paid a flat sum for a day's work or for doing a particular job" and, in contrast, § 778.114 applies to employees who are "employed on a salary basis." Department of Labor Regulations provide that an employee is considered to be paid "on a salary basis" within the meaning of the regulations "if under his employment agreement he regularly receives each pay period on a weekly or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to *reduction because of variations* in the *quality* or *quantity* of the work performed. Subject to the exceptions provided below, the employee must receive his full salary for any week in which he performs any work without *regard to the number of days or* hours worked." 29 C.F.R. § 541.118(a) (emphasis added) Plaintiffs fail to meet this definition because they generally do not receive compensation for the days they do not work. The workers do not receive a flat salary per week regardless of how many days of the week they have worked. Instead, they are paid a daily rate, and their weekly salary is computed by multiplying the number of days worked by their daily wage. Accordingly, it is clear that they are covered by § 778.112, not § 778.114.

The Court reaches this conclusion despite the language in *Friedrich v. U.S. Computer Serv.*, 833 F.Supp. 470, 474–75 (E.D.Pa.1993), that § 778.112 "seems" to apply to workers

such as migrant workers and independent contractors. This Court finds that § 778.112 is not on its face so limited and its language is broad enough to encompass regular employees such as the plaintiffs who are explicitly employed on a daily-rate basis.

The Court notes that the CBA refers to its method of calculating overtime compensation as the "fluctuating workweek" method, which is the terminology found in Section 114. CBA, App. A, ¶ 3, at 38–39 (replacing sec. 12.01) (overtime compensation will "be calculated in accord with the Fair Labor Standards Act, utilizing the fluctuating work week method"). The methods of calculating overtime under §§ 112 and 114 are the same, only one regulation applies to day rate employees and the other applies to salaried employees. Plaintiffs argue that BFI may rely upon the "fluctuating work week" method only if they satisfy the prerequisites set forth in § 778.114(c). Despite the terminology used in the CBA, the requirements of § 114 do not apply to workers who fall under § 112. In a situation such as this one, in which the workers were paid on a "flat-sum-per-day-regardless-of-hours-worked basis," § 112 applies and the constraints imposed by § 114 are not applicable. *See South Florida Beverage Corp. v. Figueredo*, 409 So.2d 490 (Fla.App.3d Dist.1981) (finding § 112 applicable to route drivers who were paid on a "flat-sum-per-day-regardless-of-hours-worked basis," even though the employment contract specifically referred to calculating overtime under § 114).

### C. There was a "clear mutual understanding" between the workers and BFI.

■ As noted earlier § 778.112, unlike § 778.114, does not contain a requirement that the parties have a clear mutual understanding "that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period." 29 C.F.R. § 778.114(a). Moreover, the Court does not read such a requirement into § 112. However, the Court finds that even if such a

requirement of a clear mutual understanding were to apply in this case, it is satisfied here.

 When the "clear mutual understanding" requirement of § 778.114 applies, "[n]either the regulation nor the FLSA in any way indicates that an employee must ... understand the manner in which his or her overtime pay is calculated. Nor do the regulation and the FLSA in any way indicate that an employer must secure from its employees written acknowledgments indicating that the employees' pay plan has been explained to them." *Bailey v. County of Georgetown,* 94 F.3d 152, 156 (4th Cir.1996). Rather, § 778.114 requires only "a 'clear mutual understanding' between employer and employee that the fixed salary is to be compensation for all straight time hours worked, whether few or many." *Mayhew v. Wells,* 125 F.3d 216, 218 (4th Cir. 1997) (repeating holdings from *Bailey,* 94 F.3d at 156; *Monahan v. County of Chesterfield,* 95 F.3d 1263, 1281 (4th Cir.1996)). Further, it is clear that "the existence of such an understanding may be based on the implied terms of one's employment agreement if it is clear from the employee's actions that he or she understood the payment plan in spite of after-the-fact verbal contentions otherwise." *Mayhew* 125 F.3d at 218.

Plaintiffs contend that the workers did not understand that the day rate compensated them for all hours worked, whether few or many. Rather, plaintiffs submit that the workers believed that the day rate compensated them for all hours worked up to eight hours. In support of this contention, plaintiffs rely on: (1) the CBA's statement that a normal workday consisted of eight hours; (2) BFI's internal productivity documents showing regular time as eight hours; (3) affidavits from workers stating that they understood that the day rate compensated them for eight hours; (4) BFI's overtime calculation demonstrating a five-day, forty-hour week; and (5) BFI's admission that overtime was calculated on the basis of a forty-hour week.

Section 10.01 of the CBA provides for hourly rates of pay for hourly workers. These plaintiffs however were governed by Appendix A, which specifically states that the hourly rate classifications do not apply and that plaintiffs are paid a set rate per day. CBA, App. A, ¶ 2. It is true that the CBA states that "[t]he normal work week shall be forty (40) hours consisting of five (5) work days of eight (8) hours each, which eight (8) hours shall be consecutive except for the lunch period." CBA, Art. 9, sec. 9.01, at 14.[3] Despite this language, however, the CBA also makes clear that "[n]othing in this Article shall be construed as a guarantee of hours or work per day or of days of work per week. The provisions of this Article shall not be construed as a basis for the calculation of overtime." *Id.,* sec. 9.03, at 15. This section of the CBA thus expressly negates the idea that it can be relied on to establish the base for overtime.

The CBA also contains provisions that apply to hourly rate employees, specifically providing for overtime for work performed in excess of eight hours in a day. *See* CBA, sec. 12.01. These plaintiffs, however, are covered by Appendix A, which makes clear that Section 12.01 does *not* apply to them. CBA, App. A, ¶ 3. Rather, as to these day rate employees, Appendix A provides: "[E]mployees shall receive premium pay for all hours worked in excess of forty (40) in any one (1) work week, said premium pay to be calculated in accord with the Fair Labor Standards Act, utilizing the fluctuating work week method." *Id.,* App. A, ¶ 3, at 38–39 (replacing sec. 12.01). We have already seen that this method is not based on an eight-hour day but on the total hours worked divided into the sum of the day rates received for the pay period. Further, Appendix A modifies six other provisions of the agreement to delete references to "eight (8) hour" days and to substitute "one (1) day" for eight hours. Appendix A undermines plaintiffs' contention that their regular day was eight hours.

3. As the court found in *South Florida Beverage Corp. v. Figueredo,* 409 So.2d 490 (Fla.App.3d Dist.1981), setting forth the "normal work week" as forty hours, consisting of five days of eight hours each, is merely "declaratory of and meaninglessly redundant to what the FLSA already provides insofar as overtime pay is concerned." *Id.* at 495.

Plaintiffs assert that pay statements they received did not state the amount of overtime hours worked and only stated the total overtime due. However, these statements confirm that plaintiffs were paid by the day at the rate specified in the contract prior to the application of the overtime premium, and they are consistent with the contract documents.

Nor does BFI's interrogatory response that overtime was calculated on the basis of a forty-hour week negate a clear mutual understanding. Such an admission is simply BFI's acknowledgment of the standards set by the FLSA in 29 U.S.C. § 207(a)(1) and the reality of how it computed overtime using the fluctuating workweek formula.

BFI's internal productivity documents do not bear on the "clear mutual understanding issue" between BFI and its workers. The residential drivers and hoppers did not have regular access to these documents so the workers "understanding" is not informed by the documents' contents. Further, these "daily productivity sheets" were used mainly to keep track of the productivity of its drivers and hoppers. *Id.* ¶ 7. BFI's use of "regular time" in these documents should not prevent BFI from using an alternative calculation in determining workers overtime compensation as provided in its contract.

BFI's illustrative overtime calculation, attached as Exhibit 1 to BFI's motion, also does not establish that the daily rate compensates each worker for only eight hours. The example clearly shows that the hourly rate is determined by dividing the base rate (*i.e.*, the daily rate × the number of days worked) by the total number of hours worked in the week. Under the plaintiffs' understanding, the hourly rate would be attained by dividing the daily rate by eight (hours) or by dividing the base rate by forty (hours). Given the obvious discrepancy between these hourly rates, workers could not be led to conclude that the day rate was compensation for only eight hours. Moreover, the workers never stated that BFI's example contributed to their understanding.

The parties dispute whether BFI specifically informed each plaintiff of its method of computing overtime. The issue however is whether there was a mutual understanding that the day rate covered all hours worked in the day, exclusive of overtime premiums. Plaintiffs' after-the-fact attestations that they thought the day rate compensated them for work up to eight hours per day cannot overcome the clear import of the CBA, which nowhere says that the day rate is for eight hours, which expressly deleted the references to an eight-hour day in computing compensation, overtime, holiday pay, and attendance bonuses, and specifically referred to an overtime formula that computes the straight time rate by dividing the total hours worked in the pay period into the sum of the day rates received.

Because the terms of the CBA provide ample basis for a clear mutual understanding that the plaintiffs would be paid the day rate regardless of the number of hours worked in a day, the Court finds that there was a clear mutual understanding even if Section 778.114 applied.

For all of the foregoing reasons,

IT IS ORDERED that defendant's motion for summary judgment is GRANTED, and plaintiffs' motion is DENIED.